FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 29 2016 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARIE N. LOUIS,

                                Plaintiff,

       -against-

ANDREA-MARIE JEROME, KERLINE
MATHIEU, JTH TAX INC. d/b/a LIBERTY
TAX SERVICES, and John Does 1-10,

                              Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 15-3094

(Wexler, J.)

APPEARANCES:

SOKOLOFF STERN LLP
By:   Adam I. Kleinberg, Esq. and David A. Gold, Esq.
179 Westbury Avenue
Carle Place, NY 11514
Attorneys for Plaintiff

GORDON & REES LLP
By:   Peter G. Siachos, Esq., Michael T. Miano, Esq., and JoAnna M. Doherty, Esq.
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Attorneys for Defendant JTH Tax, Inc.

WEXLER, District Judge:

       Plaintiff Marie N. Louis ("Louis" or "plaintiff") commenced this action alleging violations of Title 18 including mail fraud, wire fraud, and the National Stolen Property Act, violations of the Civil Racketeer Influence and Corrupt Organization Act ("RICO"), and asserting state law claims for fraud, fraudulent inducement, conversion, unjust enrichment, and intentional infliction of emotional distress. Currently before the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made by Defendant JTH Tax Inc. ("JTH"). Motion, Docket Entry ("DE") [16]. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

Plaintiff claims to have incurred financial losses as the result of a purported scheme run by defendants Andrea-Marie Jerome ("Jerome") and Kerline Mathieu ("Mathieu").[1] The facts are taken from the complaint and are assumed to be true for purposes of this motion.

JTH is a Delaware corporation that oversees franchisees of Liberty Tax Service ("Liberty Tax"). Jerome owns a Liberty Tax franchise in Franklin Square, New York, and Mathieu owns a separate franchise in Norcross, Georgia. Complaint ("Compl."), ¶¶ 17-18, DE [1].

### A. Alleged Fraudulent Acts of Defendants Jerome and Mathieu

In brief, Louis received tax services from Jerome at the Liberty Tax office in Franklin Square in March 2013. After those services were completed, Louis went to Jerome's office to thank her for her assistance. At that time, Jerome asked about Louis's credit score. When plaintiff did not know her credit score, Jerome asked for permission to run a credit report, and plaintiff consented. The two subsequently reviewed the report together, at which time Jerome urged Louis to "think about investing." Compl. ¶36. When Louis indicated that she lacked financial resources, Jerome told her that "it would not be a problem" and that she could use her credit to take out money to invest. *Id.* ¶37. Jerome offered to introduce Louis to her sister, Mathieu, who "had a business where investors, similar to plaintiff, invested with money received on credit." *Id.* ¶38. Jerome further represented that Mathieu "had a corporate attorney who assisted with the business and was hired to protect the investors such as plaintiff." *Id.* ¶40. Plaintiff trusted Jerome, but needed time to consider the investment.

---

[1] Neither Jerome nor Mathieu has appeared in this case. Although default of each has been noted by the Clerk of the Court, *see* DE [9], [23], Plaintiff has not moved for a default judgment.

Two weeks later, Jerome called Plaintiff to tell her that she had an airplane ticket for plaintiff to go to Georgia and meet with Mathieu. Compl. ¶42. Although Louis felt "pressured," *id.,* she flew to Georgia on October 3, 2013. Mathieu picked Louis up at the airport and took her to the Liberty Tax office in Norcross, Georgia. At the meeting, Mathieu "told plaintiff her investment would go towards KJM Multy, a corporation involved in truck rentals and the development of trucking routes." *Id.* ¶46. "Based on the assurances defendant Jerome and Mathieu provided, plaintiff agreed" to invest. *Id.* ¶48. Upon agreeing, Mathieu took plaintiff to a branch of BB&T Branch Banking and Trust Company ("BB&T") in Georgia to "open the partnership." *Id.* ¶49.

Jerome met Louis at the airport upon her return to New York. Jerome told Louis to bring any mail from BB&T to her. Without her knowledge, Jerome and Mathieu completed numerous credit card applications in plaintiff's name, forging her signature and using personal information "gained from Jerome's relationship with plaintiff as her tax facilitator." Compl. ¶56. Although plaintiff received mail from several credit card companies, she forwarded it all to Jerome. From November to December 2013, Jerome and Mathieu used the fraudulently obtained credit cards to charge over $24,000 in plaintiff's name. None of the charges were related to the business KJM Multy, but rather were for the personal expenses of Jerome and Mathieu.

In addition to charges made for their personal expenses, Jerome and Mathieu also used fraudulently obtained credit cards to pay for business expenses related to their Liberty Tax businesses. Jerome charged $900 towards advertising costs for Liberty Tax, and $534.50 on toner and ink supplies. Jerome and Mathieu also charged $3,500 to Supercheck Advance and $900 to

EZMoneyCenter.com "to cover cash back incentives offered by Liberty Tax Services for customers that brought in referrals and/or filed early." Compl. ¶¶82-83.

In December 2013, Jerome convinced Louis to take out a $50,000 loan for KJM Multy, the trucking logistics company. Plaintiff signed the loan application upon Jerome's representation that the monies would be paid back quickly. Plaintiff alleges that defendant Jerome then opened a Capital One Bank account without her knowledge, had the loan proceeds deposited into that account, and within a month, drained the account of the entire $50,000. None of the proceeds was used for KJM Multy. Although the bulk of the loan proceeds covered defendants' personal expenses, $675.92 was "transferred and/or paid" to JTH, Compl. ¶103, and $600 was used for Liberty Tax advertising.

**B. JTH's Relationship with its Franchisees**

Plaintiff alleges that JTH is responsible for the acts of its franchisees, in this case, Jerome and Mathieu. She claims that since JTH "exercises strict control over the manner and means by which franchisees operate their businesses," those franchisees are agents of JTH. Compl. ¶112. The bulk of the allegations regarding JTH concern its relationship with its franchisees in general. JTH approves franchise locations, provides software and technical support, and training. *Id.* ¶¶113-116. JTH expects its franchisees to conform to standards and procedures provided by JTH, to comply with all federal and state laws, and to provide JTH with documentation of receipts, profits and losses. Compl. ¶¶117-122.

As to the allegations of fraud, Plaintiff alleges only that JTH "received funds from KJM Multy's business checking account,"[2] that these funds "were not related to any services that JTH

---

[2] The complaint alleges that JTH received a payment of $675.92 from KJM Multy. Compl. ¶103. There are no other allegations of direct payments to JTH.

Tax offered to KJM Multy," and that JTH "never returned any of the stolen funds." Compl. ¶¶ 11, 126-27. Plaintiff further alleges that "the addition of plaintiff's money to defendant's business should have triggered JTH Tax's attention." Compl. ¶11.

## II. LEGAL STANDARDS

### A. Standard on Motion to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of Plaintiff. *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010). The plaintiff must plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "formulaic recitation of the elements of cause of action will not do," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at 679. Moreover, since the "mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Allstate Ins. Co. v. Valley Physical Med. &*

*Rehab., P.C.*, No. 05-5934, 2009 WL 3245388, at *3 (E.D.N.Y. Sept 30, 2009) (internal quotation and citation omitted).

## III. DISCUSSION

### A. RICO Claims

Taking plaintiff's allegations as true, defendants Jerome and Mathieu perpetrated a scheme to defraud plaintiff of monies related to a phony investment in KJM Multy, a trucking logistics business. Plaintiff does not allege that JTH was directly involved in these fraudulent activities, but rather seeks to hold JTH liable for the acts of Jerome and Mathieu, under either a theory that JTH was a franchisor with direct control of the franchisee, or that Jerome and Mathieu acted as JTH's agents. Thus, plaintiff's theory of the case against JTH is based solely on vicarious liability.

"Within the Second Circuit, 'courts ... generally do not impose vicarious liability under RICO unless the corporate ... defendant is a central figure in the RICO scheme.'" *Fairfield Fin. Mrtg. Grp., Inc. v. Luca*, 925 F. Supp. 2d 344, 350 (E.D.N.Y. 2013) (quoting *Makowski v. United Bhd. & Joiners of Am.*, 08 Civ. 6150, 2010 WL 3026510, at *6, (S.D.N.Y. Aug. 2, 2010)); *see also Qatar Nat'l Navigation & Transp. Co., Ltd. v. Citibank, N.A.*, No. 89 Civ. 0464, 1992 WL 276565, at *7 (S.D.N.Y. Sept. 29, 1992) (noting that "vicarious liability has been held to be at odds with Congressional intent in enacting RICO since the statute was designed to protect corporations from criminal infiltration rather than hold them liable." (citations omitted)), *aff'd* 182 F.3d 901 (2d Cir.1999). "Plaintiffs seeking to impose vicarious liability must, at a minimum, show that a corporate ... officer ... had knowledge of or was recklessly indifferent toward the unlawful activity." *Makowski,* 2010 WL 3026510, at *6 (internal quotation and

citation omitted). In addition, a court may consider factors such as "the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these employees themselves committed the alleged predicate acts, and whether the corporation substantially benefited from the racketeering activity." *Id.*

Plaintiff fails to allege that JTH had knowledge of the unlawful activity, and it is clear from the complaint that Jerome or Mathieu, the only direct participants, were merely franchisees and not high-ranking employees of JTH. The complaint suggests only that JTH should have known something was amiss in that "the addition of plaintiff's money to defendant's business should have triggered JTH Tax's attention," Compl. ¶ 11, but there are no factual allegations to support this suggestion. The lone direct benefit derived by JTH was the payment to it of $675.92 made with fraudulently obtained funds. *See* Compl. ¶103. There are no allegations that JTH had any knowledge about the source of the funds, or claims suggesting that JTH was recklessly indifferent. Finally, the complaint alleges no facts indicating that JTH derived any substantial benefit from the fraud. As the complaint does not allege activity by JTH sufficient to hold it vicariously liable for the RICO claims, JTH's motion to dismiss those claims is granted.

## B. Other Federal Claims

Plaintiff's First, Second, Third, and Fourth "claims" are for mail fraud, 18 U.S.C. §1341, wire fraud, 18 U.S.C. § 1343, and for violations of the National Stolen Property Act ("NSPA"), 18 U.S.C. §2314 and §2315. To the extent plaintiff intended these to be separate causes of action and not predicate acts supporting her RICO claims, they are dismissed. Violations of Title 18 do not provide a basis for a civil cause of action unless the statute includes an express or implied right of action. *See, e.g., Hill v. Didio,* 191 F. App'x 13, 14 (2d Cir. 2006) (noting that a

"private individual may bring suit under a federal statute only when Congress specifically intended to create a private right of action."). The criminal statutes forming the basis of plaintiff's "claims" do not provide a private right of enforcement. *Mercado v. Quantum Servicing Corp.*, No. 15-CV-1500, 2015 WL 1969028, at *1 (E.D.N.Y. Apr. 29, 2015) (no private right of enforcement under 18 U.S.C. § 1341); *Carvel v. Franchise Stores Realty Corp.*, No. 08 CIV. 8938, 2009 WL 4333652, at *11 (S.D.N.Y. Dec. 1, 2009) (no private right of action under NSPA §§ 2314 and 2315); *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) (no private right of action under either 18 U.S.C. § 1341 or §1343).

## C. State Law Claims

The complaint also contains state law claims for fraud, fraudulent inducement, conversion, unjust enrichment, and intentional infliction of emotional distress.[3] As there are no allegations of any direct conduct by JTH, it may only be held liable vicariously. Plaintiff argues that JTH is liable for the acts of its franchisees either as a result of JTH's control over the day-to-day operations of the franchise or as a result of an agency relationship between JTH and Jerome and Mathieu.

The general rule is that a franchisee is not the agent of the franchisor "because the typical franchise agreement disclaims any agency relationship, instead establishing the franchise as an independent business, operating at the franchisee's direction and for its own benefit." *Nebraskaland, Inc. v. Sunoco, Inc. (R & M)*, No. 10 CV 1091, 2013 WL 5656143, at *5

---

[3] As a threshold matter, the Court notes that plaintiff has not indicated whether the law of New York or Georgia should apply over her state law claims. Defendant JTH has referenced New York law in its motion, however, and plaintiff has not disputed this choice. The Court applies New York law since "[w]here the Parties exhibit implied consent to a particular body of substantive law, such consent 'is, of course, sufficient to establish the applicable choice of law.'" *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 399 (S.D.N.Y. 2013) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir.2009)).

8

(E.D.N.Y. Oct. 11, 2013). A franchisor may be held accountable for the acts of its franchisee "if the franchisor exercised such complete control over the day-to-day operations of the franchisee's business that its purported independence may be fairly dismissed as a fiction." *Id.*

Although examination of the franchise agreement is typical in determining the degree of control exercised by the franchisor, it is not necessary here as the bare allegations in the complaint are insufficient. Plaintiff's allegations regarding JTH's "strict control" are generalized and refer to such issues as approval of the franchise location, setting of standards and operating procedures, reporting requirements, training, and software and technical support. These allegations pertain to uniformity and standardization across franchises, not day-to-day oversight. There is not a single specific allegation as to JTH's daily activities or involvement at either Jerome's or Mathieu's franchise. Considering plaintiff's allegations in the light most favorable to her, she has not alleged that JTH exercised control over the daily operations of these franchises sufficient to impose liability upon the franchisor. *See Manos v. Geissler*, 377 F. Supp. 2d 422, 429 (S.D.N.Y. 2005) (granting motion to dismiss for failure to sufficiently allege day-to-day control by franchisor).

Liability may also be imposed on a franchisor "if it exercised ultimate control over the instrumentality that caused harm to an injured third-party (the so-called instrumentality test)." *Nebraskaland, Inc.*, 2013 WL 5656143, at *5; *see also Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 87 (E.D.N.Y. 2000) (court specifically looks to "whether the franchisor exercises a considerable degree of control over the instrumentality at issue in a given case."), *aff'd sub nom. Wu v. Dunkin' Donuts, Inc.*, 4 F. App'x 82 (2d Cir. 2001). Here, there are no allegations that JTH or Liberty Tax offered business opportunities in fields unrelated to tax

preparation let alone that JTH exercised control with particular respect to the individual defendants' allegedly fraudulent conduct. Plaintiff's conclusory allegations are insufficient to establish JTH's franchisor liability.

Plaintiff also alleges that JTH is vicariously liable under a theory of apparent authority. Under general rules of agency, "a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority." *Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566, 102 S. Ct. 1935, 1942, 72 L. Ed. 2d 330 (1982). "Under an apparent authority theory, '[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.'" *Id.*; quoting Restatement (Second) of Agency, §261, Comment a, p. 571. To succeed on a theory of apparent authority, a "third party must establish two facts: (1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representations of the agent." *Herbert Constr. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 993–94 (2d Cir. 1991) (internal citations omitted).

The only allegation that arguably relates to the first factor is that there were "signs, posters, and other documents associated with Liberty Tax" located within Mathieu's Liberty Tax franchise. Compl. ¶45. There is no description of the content of these materials, and plaintiff does not allege that those materials were utilized in any manner during the exchanges between plaintiff and the individual defendants. A franchisee's use of signage and other advertising materials provided by the franchisor does not, by itself, create an agency relationship. Indeed,

10

"[i]f advertising is the stuff of agency then every advertisement by a franchisee with the franchisor's mark would confirm an agency." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003). The mere presence of such materials is insufficient in the absence of allegations that the fraudulent actors actively used them to create the appearance that they acted with the franchisor's authority.

As to the requirement of reasonable reliance by the plaintiff, the complaint contains no allegations that Jerome and Mathieu that represented that they were acting on behalf of JTH or Liberty Tax, and plaintiff has not alleged that the relationship of JTH or Liberty Tax to either Jerome or Mathieu played any role whatsoever in her decision to invest in the fraudulent business opportunity. Although plaintiff alleges that various meetings took place at the Liberty Tax franchises owned by Jerome and Mathieu, there are no allegations that she somehow mistook the scheme proposed by the individual defendants as a business opportunity offered by Liberty Tax or that the location of these meetings impacted her decision to participate. Indeed, the complaint alleges that Jerome represented that her sister, Mathieu, "had a business where investors, similar to plaintiff, invested with money received on credit." Compl. ¶ 38. There is no allegation that this "business" was in any way associated with JTH or Liberty Tax, and a plain reading of the allegation clearly implies a secondary "business" run by Mathieu. Plaintiff does not allege that she relied on some belief that JTH or Liberty Tax was behind the offer or that she would not have proceeded if she'd believed otherwise. To the contrary, she states that she agreed to invest "[b]ased on the assurances defendant Jerome and Mathieu provided." *Id.* ¶48. Those assurances did not implicate Liberty Tax or JTH, but rather concerned Jerome's representations that plaintiff would quickly recoup her investment, plus "half the profits," *Id.*

11

¶38, and that her sister Mathieu "had a corporate attorney who assisted with the business and was hired to protect the investors such as plaintiff." *Id.* ¶40.

Plaintiff's allegations are insufficient to establish that JTH is vicariously liable for the acts of defendants Jerome and Mathieu. Accordingly, JTH's motion to dismiss the state law claims is granted as well.

## IV. CONCLUSION

For the reasons stated above, defendant JTH Tax Inc.'s motion to dismiss is granted, and it shall be terminated from the case. The case remains open as to plaintiff's claims against the remaining defendants.

SO ORDERED.

                                                        s/ Leonard D. Wexler
                                                    LEONARD D. WEXLER
                                                    UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
        August 29, 2016